UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BORÇELIK ÇELIK SANAYII TICARET A.Ş., ARCELORMITTAL ÇELIK TICARET A.Ş., BAMESA CELIK SERVIS SAN. VE TIC. A.Ş., and BAMESA MURADIYE DEMIR ÇELIK SAN. VE TIC. A.Ş, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. | Court No. 26-00722 |

**COMPLAINT**

Pursuant to Rules 3(a)(2) and 7(a)(1) of the Rules of the U.S. Court of International Trade ("USCIT Rules") and 19 U.S.C. § 1516a(a)(2)(A), Borçelik Çelik Sanayii Ticaret A.Ş., along with its collapsed entities, ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik Servis San. Ve Tic. A.Ş., and Bamesa Muradiye Demir Çelik San. Ve Tic. A.Ş (collectively, "Borçelik"), by and through its undersigned counsel, alleges and states as follows:

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1. Borçelik appeals certain of the U.S. Department of Commerce's ("Commerce") final determination in the sales at less-than-fair-value ("LTFV") investigation of certain corrosion-resistant steel products ("CORE") from the Republic of Türkiye. *See Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42216 (Dep't Commerce Aug. 29, 2025) ("*Final Determination*"), and accompanying Issues and Decision Memorandum (Dep't Commerce Aug. 25, 2025) ("I&D Mem."). The period of investigation ("POI") is July 1, 2023, through June 30, 2024.

2.On December 19, 2025, Commerce published the antidumping duty order and imposed a dumping margin of 6.48% on imports of subject merchandise manufactured by Borçelik and its affiliated companies. *See Corrosion-Resistant Steel Products From Brazil and Mexico: Amended Final Antidumping Duty Determination; Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 59494 (Dep't Commerce Dec. 19, 2025) (the "*Order*").

3.Borçelik brings this action to contest, as unsupported by substantial evidence on the record and otherwise not in accordance with law, the following determinations by Commerce, which contributed to the dumping margin Commerce calculated in the *Final Determination* and imposed by the *Order*:

a.Commerce unreasonably and unlawfully refused to assign surrogate costs to home-market sales where the CONNUMs[1] "that were sold but not produced" by Borçelik, and removed those sales from the home-market comparison;

b.Commerce unreasonably and unlawfully limited Borçelik's sales-side duty drawback adjustment to a single Inward Processing Certificate ("IPC") but calculated the cost-side duty drawback adjustment based on all IPCs Borçelik used during the POI; and

c.Commerce unreasonably and unlawfully limited Borçelik's duty drawback adjustment to certain IPCs that "closed" during the POI.

---

[1] "{A} CONNUM is a number designed to reflect the hierarchy of certain characteristics used to sort subject merchandise into groups and allow Commerce to match identical and similar products across markets." *Manchester Tank & Equip. Co. v. United States*, 483 F. Supp. 3d 1309, 1312 n.3 (Ct. Int'l Trade 2020) (citation omitted).

## JURISDICTION

4. Pursuant to 28 U.S.C. § 1581(c), and through 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i), this Court has exclusive jurisdiction to review Commerce's final determination in a LTFV investigation.

## STANDING OF PLAINTIFF

5. Plaintiff Borçelik is a foreign manufacturer, producer, and exporter of the subject merchandise and is therefore an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3), and 28 U.S.C. § 2631(k)(1).

6. Borçelik actively participated in the investigation that is the subject of this appeal through detailed submissions, including filing questionnaire responses, supplemental questionnaire responses, case and rebuttal briefs. Accordingly, Borçelik has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

7. Commerce published the *Order* in the Federal Register on December 19, 2025. This Complaint is being filed concurrently with the summons initiating this action. The summons was timely filed on January 16, 2026, *see* Summons (Jan. 16, 2026), ECF No. 1, which is within thirty (30) days of Commerce's publication of the *Order*, *see* 19 U.S.C. § 1516a(a)(2)(A)(i)(II). In accordance with USCIT Rules 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c), Borçelik's Complaint is timely.

## STANDARD OF REVIEW

8. This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

9. When reviewing whether Commerce's findings are supported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (citation omitted). The substantial evidence inquiry takes into account the entire record, which includes evidence that supports and detracts from the conclusion reached. *Nippon Steel*, 458 F.3d at 1352.

10. When determining whether Commerce's determinations are lawful, the Court considers whether Commerce exercised its discretion in a manner that is reasonable and avoided arbitrary action. If Commerce abuses its discretion or its decision is arbitrary or capricious, then its determination is not in accordance with law. *See, e.g.*, *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1372 (Fed. Cir. 2017) ("Commerce's decision will {also} be set aside if it is arbitrary and capricious." (alteration in original) (quoting *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012)); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) (remanding where Commerce's refusal to accept corrective information constituted an abuse of discretion). Additionally, this Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 927 F. Supp. 451, 454 (Ct. Int'l Trade 1996).

## STATEMENT OF FACTS

11. On October 2, 2024, Commerce initiated an investigation into whether imports of CORE products from Türkiye (among other countries) were being sold in the United States for LTFV.

*See Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 80196 (Dep't Commerce Oct. 2, 2024).

12. On October 25, 2024, the United States International Trade Commission ("ITC") preliminarily determined that there is a reasonable indication that imports of CORE products are materially injuring the U.S. industry. *See Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam*, 89 Fed. Reg. 85235 (Int'l Trade Comm'n Oct 25, 2024).

13. Commerce selected Borçelik and Yıldız Demir Çelik Sanayi A.Ş ("YDÇ") as the mandatory respondents in the investigation. *See* Respondent Selection Memorandum (Oct. 23, 2024).

14. Subsequently, Commerce issued questionnaires to Borçelik, to which Borçelik timely and adequately responded. *See generally* Request for Information (Oct. 23, 2024). Commerce requested and Borçelik provided a home-market sales database and cost-of-production/constructed-value databases. *See* Borçelik's Section B Questionnaire Response, Exh. B-1 (Dec. 19, 2024) ("Borçelik Initial Sec. B QR"); Borçelik's Section D Questionnaire Response, Exhs. D-1.a, D-1.b (Dec. 23, 2024) ("Borçelik Initial Sec. D QR"). Certain CONNUMs in Borçelik's home-market sales database lacked cost data.

15. Despite issuing several supplemental questionnaires, Commerce did not request additional information about Borçelik's home-market sales that lacked cost data.

16. In response to Section C of Commerce's initial questionnaire, Borçelik reported that one IPC closed, while others were in the process of closing or remained open. Borçelik's Section C

Questionnaire Response at 36–37 (Dec. 12, 2024) ("Borçelik's Initial Sec. C QR"). Borçelik explained that it would submit closure documentation to Commerce when the Government of Türkiye provided such information to Borçelik. *Id*. at 37.

17. On March 25, 2025, in response to a supplemental questionnaire, Borçelik reported that all IPCs that it used during the POI had closed and provided supporting documentation. Borçelik's Fourth Supplemental Section C Questionnaire Response at 14–15 (Mar. 25, 2025) ("Borçelik's Suppl. Sec. C QR"). Specifically, Borçelik submitted screenshots of the realized consumption and yield/loss ratios of the IPCs that closed since the initial questionnaire. *Id.* at 15, Exhs. S4-27, S4-28. Because correspondence from the Government of Türkiye had been consistently accepted by Commerce as evidence of IPC closure, Borçelik also reported the list of realized exportation under all closed IPCs and revised its duty drawback calculation worksheet and the per-unit sales side adjustment for all U.S. sales imported under those IPCs. *Id.* at 15, Exh. S4-29.

18. At verification, Commerce examined information related to Borçelik's cost and home-market sales and the IPCs. *See* Verification of the Sales Response of Borcelik in the Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from the Republic of Türkiye (July 8, 2025) ("Sales Verification Report"); Verification of the Cost Responses of Borcelik Celik Sanayii Ticaret A.S. in the Less-Than-Fair-Value Investigation of Corrosion-Resistant Steel Products from the Republic of Türkiye (July 7, 2025) ("Cost Verification Report").

19. Specifically, during the cost verification, Commerce examined Borçelik's system for tracking and the data underlying the cost of production for CONNUMs. *See* Cost Verification Report at 8–12. Commerce did not identify any issues with respect to home-market sales lacking

cost data. *See id*. Commerce did not identify issues with home-market sales that did not have cost data during the sales verification either. *See generally* Sales Verification Report.

20. With respect to IPCs, at the sales verification, Commerce reviewed the evidence underlying Borçelik's duty drawback request, including the documentation of IPC closure and realization of imports and exports, and found no discrepancies or issues with Borçelik's reporting. *Id.* at 14.

21. Commerce issued the preliminary determination and published the federal register notice of its preliminary determination on April 3 and 10, respectively. *Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 15340 (Dep't Commerce Apr. 10, 2024) ("*Preliminary Determination*"), and accompanying Preliminary Decision Memorandum (Apr. 3, 2025) ("Prelim. Dec. Mem."). Commerce issued an amended preliminary determination on May 9, 2025, correcting a ministerial error that is not relevant to this appeal. *See Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Amended Preliminary Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 19677 (Dep't Commerce May 9, 2025) ("*Am. Preliminary Determination*").

22. Along with the *Preliminary Determination*, Commerce issued a memorandum finding that Borçelik Çelik Sanayii Ticaret A.Ş. is affiliated with ArcelorMittal Çelik Ticaret A.S. (a reseller of foreign like product), Bamesa Celik Servis San. Ve Tic. A.Ş. (a steel service center) and Bamesa Muradiye Demir Çelik San. Ve Tic. A.Ş (a steel service center). *See* Single-Entity Analysis for Borcelik Celik Sanayii Ticaret A.S. and Affiliated Companies (Apr. 3, 2025).

Commerce preliminarily collapsed all four companies into a single entity for the investigation. *See id*.

23. In the *Preliminary Determination*, Commerce's SAS program erroneously removed the home-market sales from Borçelik's home-market comparison where the CONNUMs did not have cost data but were sold by Borçelik. *See* Preliminary Determination Analysis Memorandum for Borçelik Çelik Sanayi Ticaret A.Ş. (Apr. 3, 2025), ("Prelim. Analysis Mem.") Attach. 1, at 128–29, *as amended by* Amended Preliminary Determination Calculations for Borçelik Çelik Sanayi Ticaret A.Ş. (May 5, 2025).

24. Also, Commerce made two errors in the *Preliminary Determination* with respect to Borçelik's duty drawback adjustment.

25. First, Commerce contravened its obligation to use the same IPCs to calculate the sales-side and cost-side duty drawback adjustments. The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") requires that when Commerce calculates a duty drawback adjustment, it should ensure that "any increase to {export price} . . . be accompanied by a *corresponding increase* to {cost of production} and {constructed value}." *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1342 (Fed. Cir. 2011) (emphasis added).

26. In the *Preliminary Determination*, Commerce included all of the IPCs that Borçelik used in calculating the cost-side duty drawback adjustment (increasing the cost of production), but only included the single IPC that Borçelik reported as closed in its initial Section C Questionnaire Response in calculating the sales-side duty drawback adjustment. *See* Prelim. Dec. Mem. at 13; Prelim. Analysis Mem. at 8.

27. Second, Commerce unlawfully and unreasonably limited Borçelik's duty drawback adjustment to the single IPC that Borçelik reported as closed in its initial Section C

Questionnaire Response. *See* Prelim. Dec. Mem. at 13 ("{O}nly one of Borçelik's IPCs was closed during the POI . . . .").

28. Borçelik advanced robust and credible arguments, which were supported by record evidence, in its administrative case and rebuttal briefs on these issues. For example, Borçelik explained that Commerce has an established practice of using the SAS program to find surrogate cost data in its home-market analysis where home-market sales do not have cost data. *See* Case Brief of Borçelik Çelik Sanayii Ticaret A.Ş (Cost Issues) at 3 & nn.8–9 (July 17, 2025). In fact, Commerce followed this practice with respect to YDÇ, by inputting surrogate costs for home-market CONNUMs for which there were no costs but that were sold (but not produced) by YDÇ. *See id*. at 4 & n.14 (citing Preliminary Determination Analysis Memorandum for Yıldız Demir Çelik Sanayi A.Ş. and Yıldız Entegre Ağaç Sanayi ve Ticaret A.Ş. at 4–13 (Apr. 3, 2025)).

29. Borçelik emphasized that Commerce must calculate Borçelik's cost-side duty drawback adjustment and sales-side duty drawback adjustment based on the same closed IPCs. *See id*. at 4–5 (citing, *inter alia*, *Saha Thai*, 635 F.3d at 1342).

30. Borçelik urged Commerce to reconsider its preliminary determination to limit Borçelik's duty drawback adjustment to a single IPC because the Federal Circuit has been clear that duty drawback adjustment "requires an adjustment to 'export price' *based on the full extent of the duty drawback*." Case Brief of Borçelik Çelik Sanayii Ticaret A.Ş (Sales Issues) at 6 & n.19 (July 22, 2025) (quoting *Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1197 (Fed. Cir. 2021) (emphasis added)). Borçelik observed that by limiting Borçelik's duty drawback adjustment to IPCs that closed during the POI, Commerce broke from the plain language of the statute, binding case law, and its own established practice. *See id*. at 5–7.

31. In the *Final Determination*, Commerce did not reconsider its position on any of these issues.

32. Commerce refused to assign surrogate costs to home-market CONNUMs which had no cost data. *See* I&D Mem. at 13–14 (refusing to assign surrogate cost data to "home-market sales . . . that were sold but not produced during the POI"). Commerce failed to mention, much less address, its practice of assigning surrogate costs under these circumstances. Neither did Commerce acknowledge that it had followed this practice for YDÇ. And while Commerce acknowledged that the data Borçelik provided concerning costs and sales were correct, Commerce blithely concluded that the missing cost data impeded Commerce's ability to assign surrogate cost data. *See id*. 14.

33. With respect to Borçelik's duty drawback adjustment, Commerce insisted that it had discretion to develop a methodology to implement the language of the statute. *See id*. at 41.

34. Commerce relied on one of its own determinations, in which it erroneously attempted to reframe the Federal Circuit's holding in *Saha Thai* to avoid reconsidering Borçelik's cost-side duty drawback adjustment. *See id.* at 45.

35. Then, Commerce mischaracterized its practice of calculating duty drawback adjustment by claiming that it in generally limits its examining of data (in the duty drawback context) to "costs and expenses during the POI." *Id*. at 41. Relying on stale agency determinations concerning the Republic of Türkiye, Commerce claimed it "has a longstanding practice" of limiting duty drawback adjustments to IPCs that closed during the POI. *Id*. at 43; *see id*. at 42–44. However, Commerce did not address binding case law that requires it to provide a duty drawback adjustment based on all closed IPCs—even if those IPCs closed after the POI. *See Uttam Galva*, 997 F.3d at 1197; *Tosçelik Profil ve Sac Endüstrisi A.S. v. United States*, 321 F.

Supp. 3d 1270, 1276 (Ct. Int'l Trade 2018); *Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States*, 439 F. Supp. 3d 1342, 1347 (Ct. Int'l Trade 2020).  Moreover, Commerce mischaracterized the evidentiary burden for establishing entitlement to a duty drawback adjustment—focusing on whether Borçelik set home-market prices to recoup uncollected duties. *See* I&D Mem. at 44.

36. In the *Final Determination*, Commerce calculated a dumping margin of 6.48% for Borçelik Çelik Sanayii Ticaret A.Ş. and its affiliated companies, which Commerce continued to find constituted a single entity.  90 Fed. Reg. at 42217.

37. On November 28, 2025, the ITC notified Commerce that it had determined that "an industry in the United States is materially injured by reason of imports of corrosion-resistant steel products from" the countries subject to the investigation, including the Republic of Türkiye. *See* ITC Letter to Hon. C. Abbott (Nov. 28, 2025).

38. Commerce published the *Order* on December 19, 2025.  90 Fed. Reg. 59494.

39. The *Final Determination*, upon which the *Order* was based, is unsupported by substantial evidence on the record and is otherwise not in accordance with law with respect to the matters set forth in the following counts

40. On January 16, 2026, Borçelik timely filed its summons. Summons (Jan. 16, 2026), ECF No. 1.

## STATEMENT OF CLAIMS

### COUNT I

41. The facts and allegations contained in paragraphs 1 through 40 are restated and incorporated herein by reference.

42. Commerce unlawfully and unreasonably departed from its clearly established practice when it refused to assign surrogate cost data to home-market CONNUMs that Borçelik "sold but {did} not produce{}," I&D Mem. at 14, that lacked cost data because Commerce did not address its practice or justify treating Borçelik's home-market CONNUMs differently (as compared to Commerce's practice or Commerce's treatment of YDÇ's home-market CONNUMs that lacked cost data).

43. Therefore, Commerce's refusal to assign surrogate cost data to these home-market CONNUMs is not supported by substantial evidence on the record and not in accordance with the law.

## COUNT II

44. The facts and allegations contained in paragraphs 1 through 43 are restated and incorporated herein by reference.

45. Commerce contravened the statute, binding case law, and its clearly established practice of calculating the cost-side and sales-side duty drawback adjustments based on the same closed IPCs by limiting Borçelik's sales-side adjustment to a single IPC but calculating the cost-side adjustment based on all IPCs Borçelik used during the POI.

46. Therefore, Commerce's calculation of Borçelik's cost-side adjustment is not supported by substantial evidence on the record and is not in accordance with the law.

## COUNT III

47. The facts and allegations contained in paragraphs 1 through 46 are restated and incorporated herein by reference.

48. Commerce's decision to limit Borçelik's duty drawback adjustment to a single IPC—because that IPC "closed" during the POI—is inconsistent with the statute, binding case law, and

Commerce practice of calculating duty drawback adjustments (in Turkish cases) based on record evidence that the IPC is closed even if it closed after the POI or period of review.

49. Therefore, Commerce's decision to limit Borçelik's duty drawback adjustment to a single IPC that closed during the POI is not supported by substantial evidence on the record and is not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Borçelik respectfully requests this Court to:

(a) Hold that Commerce's *Final Determination* is not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Borçelik in this Complaint;

(b) Remand the *Final Determination* to Commerce for determination consistent with the opinion of this Court; and

(c) Grant such additional relief as the Court may deem just and proper.

/s/ **Jessica R. DiPietro**
Jessica R. DiPietro
Leah N. Scarpelli
Matthew M. Nolan
Tyler J. Kimberly

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 350-3622

*Counsel to Borçelik Çelik Sanayii Ticaret A.Ş. , ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik Servis San. Ve Tic. A.Ş. and Bamesa Muradiye Demir Çelik San. Ve Tic. A.Ş*

Dated: January 16, 2026