UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| BORÇELIK ÇELIK SANAYII TICARET A.Ş., ARCELORMITTAL ÇELIK TICARET A.Ş., BAMESA CELIK SERVIS SAN. VE TIC. A.Ş., and BAMESA MURADIYE DEMIR ÇELIK SAN. VE TIC. A.Ş, *Plaintiffs,* and YILDIZ DEMIR ÇELIK SANAYI A.S., et al., *Consolidated-Plaintiffs,* v. UNITED STATES, *Defendant,* and STEEL DYNAMICS, INC., et al, *Defendant-Intervenors.* | **NON-CONFIDENTIAL VERSION** **Consol. Court No. 26-00722** **Confidential Business Proprietary Information Deleted from Pages: 11, 12 & 22.** |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES PURSUANT TO RULE 56.2**

Jessica R. DiPietro
Leah N. Scarpelli
Matthew M. Nolan
Tyler J. Kimberly
Chelsea J. Burkhart

**ArentFox Schiff LLP**
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 350-3622

*Counsel to Borçelik Çelik Sanayii Ticaret A.Ş., ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik Servis San. Ve Tic. A.Ş. and Bamesa Muradiye Demir Çelik San. Ve Tic. A.Ş*

July 10, 2026

**TABLE OF CONTENTS**

**Page**

I.   STATEMENT PURSUANT TO RULE 56.2(C)(1) ............................................................. 2

    A.   Administrative Record to be Reviewed ................................................................ 2

    B.   Issues Presented and Summary of Argument ........................................................ 2

II.   STATEMENT OF FACTS ...................................................................................... 3

III.   STANDARD OF REVIEW ..................................................................................... 7

IV.   ARGUMENT ..................................................................................................... 8

    A.   Commerce's Decision to Exclude IPCs that Closed Outside of the POI Is
    Not Supported by Substantial Evidence. ............................................................... 8

        1.   The Record Evidence Supports A Duty Drawback For All Closed
        IPCs Reported During the Investigation .................................................. 10

        2.   Commerce's Decision to Exclude Certain IPCs Unreasonably
        Ignores Agency Practice and Court Precedent Raised by Plaintiffs. ....... 14

    B.   Commerce's Calculation of the Drawback Adjustment Is Not in
    Accordance with Law ...................................................................................... 20

    C.   Commerce's Decision to Refuse to Input Surrogate Cost Data Is Not
    Supported by Substantial Evidence .................................................................... 22

V.   PRAYER FOR RELIEF ....................................................................................... 24

AFSDOCS:306544753.1

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Kitchen Cabinet All. v. United States*,
745 F. Supp. 3d 1270 (Ct. Int'l Trade 2024) ...........................................................................10

*Am. Kitchen Cabinet All. v. United States*,
803 F. Supp. 3d 1231 (Ct. Int'l Trade 2025) ...........................................................................10

*Apex Frozen Foods Priv. Ltd. v. United States*,
862 F.3d 1322 (Fed. Cir. 2017)..............................................................................................18

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
624 F. Supp. 3d 1343 (Ct. In'tl Trade 2023) ..........................................................................15

*Assan Aluminiyum Sanayi ve Ticaret A.S. v. United States*,
No. 21-246, 2026 WL 1747091 (Ct. Int'l Trade June 17, 2026) ................................... *passim.*

*Burlington Truck Lines v. United States*,
371 U.S. 156 (1962)................................................................................................................7

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)................................................................................................................7

*DuPont Teijin Films USA, LP v. United States*,
407 F.3d 1211 (Fed. Cir. 2005)..............................................................................................7

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*,
357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) ..........................................................................20

*Habaş  Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.Ş.  v. United States*,
439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ..........................................................................15

*Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*,
654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023) ............................................................8, 15, 16, 17

*Liberty Frozen Foods Priv. Ltd. v. United States*,
819 F. Supp. 2d 1346 (Ct. Int'l Trade 2012) ..........................................................................19

*Maverick Tube Corp. v. Tosçelik Profil ve Sac Endustrisi A.S.*,
861 F.3d 1269 (Fed. Cir. 2017) ..............................................................................................21

*Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)................................................................................................................7, 10

AFSDOCS:306544753.1

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006)................................................................................7

*PT. Zinus Glob. Indon. v. United States*,
    628 F. Supp. 3d 1252 (Ct. Int'l Trade 2023) ..........................................................24

*PT. Zinus Glob. Indon. v. United States*,
    762 F. Supp. 3d 1257 (Ct. Int'l Trade 2025), *appeal docketed*, No. 25-1674
    (Fed. Cir. Apr. 22, 2025)........................................................................................19

*Saha Thai Steel Pipe (Pub.) Co. v. United States*,
    635 F.3d 1335 (Fed. Cir. 2011).........................................................................8, 20

*Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*,
    268 F. 3d 1376 (Fed. Cir. 2001)..............................................................................24

*SKF USA, Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001)...............................................................................19

*Tosçelik Profil ve Sak Endüstrisi A.Ş. v. United States*,
    321 F. Supp. 3d 1270 (Ct. Int'l Trade 2018) ......................................12, 13, 15, 16

*Tosçelik Profil ve Sac Endustrisi A.Ş. v. United States*,
    348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) ................................................. *passim.*

*Tri Union Frozen Prods., Inc. v. United States*,
    163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ..........................................................24

*Uttam Galva Steels Ltd. v. United States*,
    311 F. Supp. 3d 1345 (Ct. Int'l Trade 2018) ..........................................................21

*Uttam Galva Steels Ltd. v. United States*,
    416 F. Supp. 3d 1402 (Ct. Int'l Trade 2019), *aff'd* 997 F.3d 1192 (Fed. Cir.
    2021) .......................................................................................................................21

*Uttam Galva Steels Ltd. v. United States*,
    997 F.3d 1192 (Fed. Cir. 2021)..........................................................................15, 21

*Zhejiang DunAn Hetian Metal Co. v. United States*,
    652 F.3d 1333 (Fed. Cir. 2011)...............................................................................10

**Federal Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)..........................................................................................7

19 U.S.C. § 1673a ...........................................................................................................3

19 U.S.C. § 1677a(c)(1)(B)..........................................................................................8, 21

AFSDOCS:306544753.1

**Administrative Determinations**

*Aluminum Extrusions From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80512 (Dep't Commerce Oct. 3, 2024), ACCESS Barcode: 4638355-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4638355-02 ........................15, 14, 19

*Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 90 Fed. Reg. 21896 (Dep't Commerce May 22, 2025) (final AD results; 2022-2023), ACCESS Barcode: 4762281-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4762281-02..................................................................................14, 18, 19

*Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 80196 (Dep't Commerce Oct. 2, 2024) ...........................................................................................3

*Corrosion-Resistant Steel Products From Brazil and Mexico: Amended Final Antidumping Duty Determination; Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 59494 (Dep't Commerce Dec. 19, 2025)..................................................................................2, 7

*Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 15340 (Dep't Commerce Apr. 10, 2025), and accompanying Preliminary Decision Memorandum (Apr. 3, 2025).........................................5

*Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42216 (Dep't Commerce Aug. 29, 2025), and accompanying Issues and Decision Memorandum................................................................................... *passim*

*Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Amended Preliminary Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 19677 (Dep't Commerce May 9, 2025) ....................................................5

*Certain Frozen Warmwater Shrimp form India: Final Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Notice of Revocation of Order in Part*, 75 Fed. Reg. 41813 (Dep't Commerce July 19, 2010), ACCESS Barcode: 4787871-02, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4787871-01.......................................19

AFSDOCS:306544753.1

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016–2017*, 84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019), ACCESS Barcode: 3852471-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 3852471-02.......................................................23

*Certain Oil Country Tubular Goods From the Republic of Turkey: Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances, in Part*, 79 Fed. Reg. 41971 (Dep't Commerce July 18, 2014), ACCESS Barcode: 3215270-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 3215270-02 ................................................................................................18

*Certain Stilbenic Optical Brightening Agents From Taiwan: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 80 Fed. Reg. 61368 (Dep't Commerce Oct. 13, 2015), ACCESS Barcode: 3403557-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 3403557-02 ................................................................................................18

*Common Alloy Aluminum Sheet From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 89965 (Dep't Commerce Nov. 14, 2024), ACCESS Barcode: 4661654-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4661654-02 ................................................................................................14

*Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam*, 89 Fed. Reg. 85235 (Int'l Trade Comm'n Oct 25, 2024).........................................3

*Heavy-Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 24777 (Dep't Commerce Apr. 9, 2024), ACCESS Barcode 4537743-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4537743-02.......................................................................................23

*Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod from Mexico*, 67 Fed. Reg. 55800 (Dep't Commerce Aug. 30, 2002), ACCESS Barcode: 4793692-02, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4793692-01 .......................................................................................15, 19

*Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From Germany*, 67 Fed. Reg. 3159 (Dep't Commerce Jan. 23, 2002), ACCESS Barcode: 4786931-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4786931-01.......................................................18

AFSDOCS:306544753.1

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 28574 (Dep't Commerce May 27, 2021), ACCESS Barcode: 4609643-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4609643-02 .......................................................................18

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020–2021*, 88 Fed. Reg. 7941 (Dep't Commerce Feb. 7, 2023), ACCESS Barcode 4336947-03, and accompanying Issues and Decision Memorandum, ACCESS Barcode: 4336947-02.................................................................................21

*Steel Concrete Reinforcing Bar From the Republic of Türkiye: Preliminary Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 66350 (Dep't Commerce Aug. 15, 2024), ACCESS Barcode: 4609643-03, and accompanying Preliminary Decision Memorandum, ACCESS Barcode: 4609643-02 ........................................................14, 17, 18

AFSDOCS:306544753.1

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |  |
|---|---|---|
| BORÇELIK ÇELIK SANAYII TICARET A.Ş., ARCELORMITTAL ÇELIK TICARET A.Ş., BAMESA CELIK SERVIS SAN. VE TIC. A.Ş., and BAMESA MURADIYE DEMIR ÇELIK SAN. VE TIC. A.Ş, *Plaintiffs,* and YILDIZ DEMIR ÇELIK SANAYI A.S., et al., *Consolidated-Plaintiffs,* v. UNITED STATES, *Defendant,* and STEEL DYNAMICS, INC., et al, *Defendant-Intervenors.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **NON-CONFIDENTIAL VERSION** **Consol. Court No. 26-00722** **Confidential Business Proprietary Information Deleted from Pages: 11, 12 & 22** |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES PURSUANT TO RULE 56.2**

Pursuant to Rule 56.2(c) of the Rules of the U.S. Court of International Trade and the Court's Order dated June 8, 2026, ECF No. 43, Plaintiffs Borçelik Çelik Sanayii Ticaret A.Ş., along with its collapsed entities, ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik Servis San. Ve Tic. A.Ş. and Bamesa Muradiye Demir Çelik San. ve Tic. A.Ş (collectively, "Borçelik" or "Plaintiffs") foreign manufacturers and exporters of corrosion-resistant steel products ("CORE") from the Republic of Türkiye, hereby submits this memorandum of points and authorities in support of its motion for judgment on the agency record challenging the final affirmative determination as set forth below.

1

## I.    STATEMENT PURSUANT TO RULE 56.2(C)(1)

### A.    Administrative Record to be Reviewed

This is an appeal from the U.S. Department of Commerce's ("Commerce") final determination in the sales at less-than-fair-value ("LTFV") investigation of certain corrosion-resistant steel products ("CORE") from the Republic of Türkiye. *See Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42216 (Dep't Commerce Aug. 29, 2025) ("*Final Determination*"), P.R. 364 and accompanying Issues and Decision Memorandum (Dep't Commerce Aug. 25, 2025) ("IDM"), P.R. 354.  The period of investigation ("POI") is July 1, 2023, through June 30, 2024.

On December 19, 2025, Commerce published the antidumping duty ("AD") order and imposed a dumping margin of 6.48% on imports of subject merchandise manufactured by Borçelik and its affiliated companies.  *See Corrosion-Resistant Steel Products From Brazil and Mexico: Amended Final Antidumping Duty Determination; Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 59494 (Dep't Commerce Dec. 19, 2025) (the "*Order*"), P.R. 375.

### B.    Issues Presented and Summary of Argument

Plaintiffs raise the following three issues in this brief:

1.    Whether Commerce's decision to limit Borçelik's duty drawback adjustment to certain Inward Processing Certificates ("IPC") that "closed" during the POI is supported by substantial evidence.  It is not.  Here, Commerce's decision is not inclusive of the record as a whole, and unreasonably ignored precedent from this Court, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), and the agency's own past practice, all of which were raised by Plaintiffs.

2.      Whether Commerce's calculation of the drawback adjustment is based on substantial evidence and in accordance with law.  It is not because the agency erred in treating IPCs differently when calculating the cost- and sales-side duty drawback adjustments.

3.      Whether Commerce's decision to exclude certain CONNUMs from the home-market comparison that were produced and sold by Borçelik, but had no cost data, is supported by substantial evidence and in accordance with law.  It is not.  By removing home market sales from Borçelik's home market comparison where the CONNUMs did not have cost data but were produced by Borçelik, Commerce unreasonably departed from its practice of finding surrogate costs based on the most similar CONNUM and did so without sufficiently explaining its reason.

## II.    <u>STATEMENT OF FACTS</u>

Plaintiff Borçelik is a foreign manufacturer, producer, and exporter of CORE.  On October 2, 2024, Commerce initiated the antidumping duty investigation of CORE pursuant to Section 732 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673a, into whether imports of CORE from the Republic of Türkiye (among other countries) were being sold in the United States for LTFV. *See Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 80196 (Dep't Commerce Oct. 2, 2024), P.R. 53. On October 25, 2024, the United States International Trade Commission ("ITC") preliminarily determined that there is a reasonable indication that imports of CORE products are materially injuring the U.S. industry. *See Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, Netherlands, South Africa, Taiwan, Turkey, United Arab Emirates, and Vietnam*, 89 Fed. Reg. 85235 (Int'l Trade Comm'n Oct. 25, 2024).

Borçelik was one of the two mandatory respondents, along with Yıldız Demir Çelik Sanayi A.Ş ("YDÇ"), in Commerce's investigation and participated throughout the proceeding through the filing of initial and supplemental questionnaire responses, verification of the data submitted, and submission of legal arguments. *See* Respondent Selection Memorandum (Oct. 23, 2024), C.R. 23, P.R. 89. Subsequently, Commerce issued questionnaires to Borçelik, to which Borçelik timely and adequately responded. *See generally* Request for Information (Oct. 23, 2024), P.R. 90; *see also, e.g.*, Borçelik's Section A Questionnaire Response (Nov. 25, 2024) ("Sec. A QR"), C.R. 24-37, P.R. 110-112; Borçelik's Section B Questionnaire Response (Dec. 19, 2024) ("Sec. B QR"), C.R. 83-108, P.R. 135; Response of Borçelik Çelik Sanayii Ticaret A.Ş. to Section C Antidumping Duty Questionnaire (Dec. 12, 2024) ("Sec. C QR"), C.R. 46-59, P.R. 130; Borçelik's Section D Questionnaire Response (Dec. 23, 2024) ("Sec. D QR"), C.R. 112-141, P.R. 139; Borçelik's Section A Supplemental Questionnaire Response (Jan. 29, 2025) ("Supp. A QR"), C.R. 165-169, P.R. 170; Borçelik's Supplemental Section B Questionnaire Response (Mar. 20, 2025) ("Supp. B QR"), C.R. 194-214, P.R. 194; Borçelik's Third Supplemental Section D Questionnaire Response (Mar. 24, 2025) ("3rd Supp. D QR"), C.R. 238-281, P.R. 218; Borçelik's Fourth Supplemental Section C Questionnaire Response (Mar. 25, 2026) ("Supp. C QR"), C.R. 302-324, P.R. 219; *see also* Borçelik's Sales Verification Exhibits Submission (May 15, 2025) ("Sales Verification Exhs."), C.R. 466-471, P.R. 298; Borçelik's Cost Verification Exhibits Submission (May 30, 2025) ("Cost Verification Exhs."), C.R. 501-538, P.R. 309.

Commerce requested and Borçelik provided a home-market sales database and cost-of production ("COP")/constructed-value ("CV") databases. *See* Sec. B QR, Exh. B-1, C.R. 83, P.R. 135; Sec. D QR, Exhs. D-1.a, D-1.b,,C.R. 112, P.R. 139.  However, Certain CONNUMs in Borçelik's home-market sales database lacked cost data. *See generally,* Sec. D QR.

4

Despite issuing several supplemental questionnaires, Commerce did not request additional information about Borçelik's home-market sales that did not have cost data (because no such cost data existed). In response to Section C of Commerce's initial questionnaire, Borçelik reported that one IPC closed, while others were in the process of closing or remained open. Sec. C QR at 36–37, C.R. 46, P.R. 130. Borçelik explained that it would submit closure documentation to Commerce once the Government of Türkiye ("GOT") provided such information to Borçelik. *Id*. at 37.

On March 25, 2025, in response to a supplemental questionnaire, Borçelik reported that all of the IPCs that it used during the POI had since officially closed and provided supporting documentation. Supp. C QR at 14–15, Exh. S4-27, C.R. 302-03, P.R. 219.

Commerce issued the preliminary determination and published the *Federal Register* notice of its preliminary determination on April 3, 2025 and April 10, 2025, respectively. *Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 15340 (Dep't Commerce Apr. 10, 2025) ("*Preliminary Determination*"), P.R. 243, and accompanying Preliminary Decision Memorandum (Apr. 3, 2025) ("PDM"), P.R. 228. Commerce issued an amended preliminary determination on May 9, 2025, correcting a ministerial error that is not relevant to this appeal. *See Certain Corrosion-Resistant Steel Products From the Republic of Türkiye: Amended Preliminary Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 19677 (Dep't Commerce May 9, 2025), P.R. 292.

At verification, Commerce examined information related to Borçelik's cost and home-market sales and the IPCs. *See* Verification of the Sales Response of Borçelik in the Less-Than Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from the Republic of

5

Türkiye (July 8, 2025) ("Sales Verification Report"), C.R. 543, P.R. 316; Verification of the Cost Responses of Borçelik Celik Sanayii Ticaret A.S. in the Less-Than-Fair-Value Investigation of Corrosion- Resistant Steel Products from the Republic of Türkiye (July 7, 2025) ("Cost Verification Report"), C.R. 539, P.R. 310. Specifically, during the cost verification, Commerce examined Borçelik's system for tracking and the data underlying the COP for CONNUMs. *See* Cost Verification Report at 8–12. Commerce did not identify any issues with respect to home-market sales lacking cost data or issues with home-market sales that did not have cost data during the sales verification either. *See generally* Sales Verification Report. With respect to IPCs, at the sales verification, Commerce reviewed the evidence underlying Borçelik's duty drawback request, including the documentation of IPC closure and realization of imports and exports, and found no discrepancies or issues with Borçelik's reporting. *Id.* at 14.

Borçelik submitted its case and rebuttal case briefs regarding cost issues on July 17, 2025. *See* Borçelik Çelik Sanayii Ticaret A.Ş.'s Case Brief on Cost Related Issues (July 17, 2025) ("Cost Case Br."), C.R. 575, P.R. 331; Borçelik Çelik Sanayii Ticaret A.Ş.'s Case Brief on Sales Related Issues (July 22, 2025) ("Sales Case Br."), C.R. 580, P.R. 337, Borçelik Çelik Sanayii Ticaret A.Ş.'s Rebuttal Brief on Cost Related Issues (July 24, 2025) ("Cost Rebuttal Br."), C.R. 583, P.R. 343; Borçelik Çelik Sanayii Ticaret A.Ş.'s Rebuttal Brief on Sales Related Issues (July 29, 2026) ("Sales Rebuttal Br."), C.R. 586, P.R. 348.

Despite Borçelik's challenge to Commerce's *Preliminary Determination* to reconsider its decisions to not assign surrogate costs to home-market sales, and its decision to limit Borçelik's duty drawback adjustment to a single IPC, Sales Case Br. at 3-9, 17-21, C.R. 580, P.R. 337, in its *Final Determination*, Commerce did not reconsider its position on any of these issues. In the *Final Determination*, Commerce calculated a dumping margin of 6.48% for Borçelik Çelik Sanayii

6

Ticaret A.Ş. and its affiliated companies, which Commerce continued to find constituted a single entity. 90 Fed. Reg. at 42217, P.R. 364.  On November 28, 2025, the ITC notified Commerce that it had determined that "an industry in the United States is materially injured by reason of imports of corrosion-resistant steel products from" the countries subject to the investigation, including the Republic of Türkiye.  *See* ITC Letter to Hon. C. Abbott (Nov. 28, 2025), P.R. 370.  Commerce published the *Order* on December 19, 2025. 90 Fed. Reg. 59494, P.R. 375.

On January 16, 2026, Borçelik timely filed its summons. ECF No. 1.  Also, on January 16, 2026, Borçelik timely filed its complaint.  ECF No. 8.

III.    **STANDARD OF REVIEW**

Upon review, this Court "shall hold unlawful any determination, finding, or conclusion" that is found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  To determine whether Commerce's actions are supported by substantial evidence, the Court assesses whether Commerce's actions were *reasonable* in light of the record as a whole; *i.e.*, whether Commerce based its decisions on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotations omitted)); *see also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).  Where an agency "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency," it cannot be found to be reasonable.  *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  To act in accordance with law, Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

7

IV.    **ARGUMENT**

A.    **Commerce's Decision to Exclude IPCs that Closed Outside of the POI Is Not Supported by Substantial Evidence.**

A duty drawback adjustment applies to the export or constructed export price ("EP") of subject merchandise where "a foreign country would normally impose an import duty on an input used to manufacture the subject merchandise, but offers a rebate or exemption from the duty if the input is exported to the United States.*" Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1338 (Fed. Cir. 2011); *see also* 19 U.S.C. § 1677a(c)(1)(B).  The Federal Circuit upheld a two-prong test to assess duty drawback eligibility, where the respondent must demonstrate:

> (1) that the {relevant} rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, that the exemption is linked to the exportation of the subject merchandise, and (2) that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise.

*Saha Thai*, 635 F.3d at 1340 (citation omitted).

The Republic of Türkiye maintains a duty drawback system known as an Inward Processing Regime ("IPR"), where "exporters of merchandise from Turkey may have their duty liability on imports forgiven if the exporter satisfies certain requirements."  *Assan Aluminiyum Sanayi ve Ticaret A.S. v. United States*, No. 21-246, 2026 WL 1747091, at *2 (Ct. Int'l Trade June 17, 2026) (citing *Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 654 F. Supp. 3d 1311, 1318 (Ct. Int'l Trade 2023).  Under this system, "{i}nterested firms in Turkey secure Inward Processing Certificates ('IPC'), which 'set{} forth the quantity of raw material allowed to be imported duty-free and the quantity of export required to close the IPC."  *Id*.  The liability for the duties is then "extinguished" when the GOT officially "close{s}" the IPC, "meaning that an exporter has demonstrated sufficient amounts of corresponding imports and exports to Turkish authorities."  *Id*.  Commerce will grant duty drawback adjustments where the respondent shows

8

"that raw material imported under an IPC is sufficiently related to a duty drawback on the exported subject merchandise." *Id*. at *8.

During the investigation, Borçelik reported multiple IPCs used during the POI to Commerce. In response to Section C of Commerce's initial questionnaire, Borçelik reported at that time that one IPC was officially closed by the GOT, while others were in the process of closing or remained open. Sec. C QR at 36–37, C.R. 46, P.R. 130. Borçelik assured the agency that it would submit closure documentation to Commerce once the GOT provided such information to Borçelik. *Id*. at 37. Later, in response to a supplemental questionnaire, Borçelik reported to Commerce that all of the IPCs used during the POI had since been officially closed by the GOT, and Borçelik provided supporting documentation (screenshots of the realized consumption and yield/loss ratios of the IPCs that closed since the initial questionnaire, correspondence from the GOT, including the list of realized exportations under all closed IPCs, and provided a revised duty drawback calculation worksheet and the per-unit sales side adjustment for all U.S. sales imported under those specific IPCs). Supp. C QR at 14–15, Exh. S4-27, C.R. 302-03, P.R. 219. Commerce examined the provided evidence and documentation related to the closed IPCs and the reporting necessary for the duty drawback request, including the realized consumption, and found no discrepancies or issues with Borçelik's reporting. Sales Verification Report at 14, C.R. 543, P.R. 316.

Commerce's decision to limit the duty drawback adjustment to IPCs that were closed by the GOT during the POI must be remanded for further consideration and explanation because the agency "entirely failed to consider {} important aspect{s} of the problem"—namely, conflicting case law and agency decisions raised by Borçelik in its brief in response to the *Preliminary Determination*—and "offered an explanation for its decision that runs counter to the evidence

9

before the agency"—evidence on the record, verified by Commerce, that the IPCs closed. *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43.

Importantly, an agency "must examine the relevant data on the record, and articulate a satisfactory explanation for its action, including addressing material evidence on the record which detracts from its conclusion." *Am. Kitchen Cabinet All. v. United States*, 745 F. Supp. 3d 1270, 1279 (Ct. Int'l Trade 2024) (citing *Motor Vehicle Mfrs Ass'n*, 463 U.S. at 43), *appeal docketed*, No. 26-1977 (Fed. Cir. June 26, 2026); *see also Zhejiang DunAn Hetian Metal Co. v. United States,* 652 F.3d 1333, 1340 (Fed. Cir. 2011) (internal citation omitted) (The court reviews the record as a whole, including evidence that fairly supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"). If an agency "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency," its determination cannot be found to be reasonable. *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43. At the outset, Plaintiffs acknowledge that it is not the court's role to "pick and choose among the record evidence preferred by one party." *Am. Kitchen Cabinet All. v. United States*, 803 F. Supp. 3d 1231, 1243 (Ct. Int'l Trade 2025). Plaintiffs do not ask the court to "substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, but instead ask that this Court remand Commerce's *Final Determination* for the agency consider the record evidence at all.

### 1.    The Record Evidence Supports A Duty Drawback For All Closed IPCs Reported During the Investigation

Here, Commerce's decision to limit Borcelik's duty drawback adjustment to a single IPC and exclude all other closed IPCs is unreasonable, as it is unsupported and contrary to the record evidence, including evidence verified by the agency. Commerce asserted in its *Final Determination* that "there is no certainty" to "the amount of duties forgone" until the IPC closes

10

because export requirements and duty liability is only finished at that time.  IDM at 41–42, P.R. 354.  Because, Commerce claims, the company remains liable while an IPC is open, Commerce also reasons that Borçelik received no benefit from any IPCs during the POI if those IPCs did not close during the POI.  *Id.* at 41–43.  Commerce's explanation, however, is directly contradicted by its own actions and decisions within the record, pointed out by Borçelik, yet left unexplained by Commerce.  Commerce's determination also ignores record evidence.

Commerce's policy explanation for not accepting IPCs closed during the POI is just that: a policy explanation that does not address the individual facts of this case.  The record indicates a different situation than the vague description Commerce provided.  Certainly, a duty drawback amount may be uncertain while the IPC is open.  However, here, Commerce verified that the IPCs closed, therefore eliminating its claimed and unsupported risk of uncertainty.  The issue relating to Commerce's uncertainty is whether the agency was able to determine that the IPC *did actually close*, thus extinguishing the duty liability that the agency cites.  That the IPC closed outside of the POI is not relevant to the amount of benefit received by Borçelik because Commerce verified that the IPCs did close.

Thus, there are only two questions that must be asked to determine if Commerce's decision was reasonable: (1) Is Commerce correct that there is no finality where an IPC that applies during a POI, but does not close until after the POI; and (2) Did Commerce address the conflicting evidence verified by the agency that extinguished any uncertainty in its Final Determination? The answer to both questions is no.

Regarding evidence on the record that sufficiently showed existence of IPC closure verified by Commerce:  In Borçelik's Section C questionnaire response, it identified [      ] IPCs that were used during the POI for shipments to the United States: IPC Nos. [

11

]. Sec. C QR at 36-37, C.R. 46, P.R. 130; *see also* Supp. C QR 14–15, Exh. S4-27, C.R. 302-03, P.R. 219.  Borçelik specifically identified in its questionnaire that while one was officially closed, [          ] only pending the requisite official approval documentation from the GOT, and [          ] remained open.  Sec. C QR at 37.  Commerce, seeking further information, issued a supplemental questionnaire asking Borçelik to provide "any additional {IPC} closures *since the time of your initial submission*," to which Borçelik responded that "all IPCs have been closed off by the {GOT}" since the Initial Section C Questionnaire response, and provided evidence of such. Borçelik's Mar. 25, 2025 Suppl. Sec. C QR at 14, Exhs. S4-27, S4-28, S4-29, C.R. 302-03, P.R. 219.  Allowing such a submission is reasonable given the Turkish drawback system, under which final approval from the GOT could be three-to-four years *after* the IPC validity period expires. *See Tosçelik Profil ve Sak Endüstrisi A.Ş. v. United States*, 321 F. Supp. 3d 1270, 1276 (Ct. Int'l Trade 2018)). Commerce not only requested and accepted the additional information relating to the closed IPCs, Commerce verified the submitted, requested documentation for the since-closed IPCs. Yet, Commerce only granted the duty drawback adjustment for the single IPC that Borçelik reported in its original Section C Questionnaire Response and then failed to address, let alone acknowledge, the evidence of the requested, verified, closed IPCs.  Rather than address the record evidence, Commerce relied on the conclusory policy explanation that open IPCs create uncertainty, without explaining the record evidence before it that the IPCs were verified as <u>closed</u>, *i.e.,* not open, thereby eliminating any risk of uncertainty.  This is the same reasoning that was rejected in *Tosçelik Profil ve Sac Endustrisi A.Ş. v. United States*, 348 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018).

Borçelik also provided substantial evidence "necessary to calculate a per-unit drawback adjustment." *Assan*, 2026 WL 1747091, at *8 (citation omitted); *see* Sec. C QR at 36-37, C.R. 46,

12

P.R. 130; Supp. C QR 14–15, Exhs. S4-27, S4-28 and S4-29, C.R. 302-03, P.R. 219.  Specifically, Borcelik provided record evidence showing "actual import and exporter values, customs duty rates, and reconciled duties exempted."  *Assan*, 2026 WL 1747091, at *8 (citation omitted); *see also* Supp. C QR 14–15, Exhs. S4-27, S4-28 and S4-29, C.R. 302-03, P.R. 219 (providing also realized consumption and yield/loss ratios of the closed IPCs, correspondence with the GOT confirming official validation and closure of the IPCs, and Borcelik's list of realized exportation under all closed IPCs). Commerce ignored record evidence that there were sufficient imports of the imported raw material to account for the drawback received upon the exports of the subject merchandise, relying solely on the description of its policy relating to open and closed IPCs.

Importantly, at no point does Commerce argue that the amount of any duty drawback was uncertain.  Instead, Commerce's argument boils down to the following:  During the POI, IPCs were not officially closed by the GOT, and the agency thus sought further information to verify the status of the IPCs.  Once receiving information from Borçelik that the IPCs had closed, it thereby verified that the IPCs that previously caused such uncertainty were closed—thereby extinguishing the uncertainty of the IPCs.  Yet, in contradiction to the record evidence and its own verification of the company's books, records, and questionnaire responses, in the *Final Determination*, Commerce continues to claim uncertainty.

That is not reasonable.  Indeed, "{t}he one reasonable thing to do . . . is calculate Plaintiffs' duty drawback adjustments consistent with that verified information."  *Tosçelik,* 348 F. Supp. 3d at 1328.  A remand by the Court is necessary here for Commerce to consider the evidence on the record, verified by the agency, and then, to incorporate the record evidence for purposes of its adjustment methodology.

13

### 2.     Commerce's Decision to Exclude Certain IPCs Unreasonably Ignores Agency Practice and Court Precedent Raised by Plaintiffs.

Further, Commerce's decision to limit Borcelik's duty drawback adjustment to a single IPC, excluding all other closed IPCs on the record, is inconsistent with the statute, binding case law, and Commerce's practice of calculating duty drawback adjustments in Turkish cases. Commerce claimed that its decision to limit duty drawback adjustments to IPCs closed during the POI is consistent with its "longstanding practice of collecting POI COP data."  IDM at 43, P.R. 354.  This assertion of a common practice to only consider IPCs that were officially closed by the GOT is simply not true.  In making this conclusory statement, Commerce failed to consider (let alone provide an explanation for) conflicting decisions raised by Plaintiff: both at the agency level and before reviewing courts.

In Borçelik's brief in response to the *Preliminary Determination*, it highlighted to the agency multiple examples where Commerce "consistently incorporated all IPCs *used* during the POI," and directly contradicted the agency's blanket assertion.  *See* Sales Case Br. at 5 n.17, C.R. 580, P.R. 337 (citing *Common Alloy Aluminum Sheet From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 89965 (Dep't Commerce Nov. 14, 2024), ACCESS Barcode: 4661654-03, and accompanying Issues and Decision Memorandum at 5–7, ACCESS Barcode: 4661654-02; *Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 90 Fed. Reg. 21896 (Dep't Commerce May 22, 2025) (final AD results; 2022-2023), ACCESS Barcode: 4762281-03, and accompanying Issues and Decision Memorandum at 11, ACCESS Barcode: 4762281-02 ("*Alum. Foil 22-23AR IDM*"); *Steel Concrete Reinforcing Bar From the Republic of Türkiye: Preliminary Results and Rescission, in Part, of Antidumping Duty Administrative Review; 2022–2023*, 89 Fed. Reg. 66350 (Dep't Commerce Aug. 15, 2024), ACCESS Barcode: 4609643-

14

03, and accompanying Preliminary Decision Memorandum at 11-12, ACCESS Barcode: 4609643-02 ("*Rebar 22-23AR PDM*") (unchanged in final results); *Aluminum Extrusions From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 80512 (Dep't Commerce Oct. 3, 2024), ACCESS Barcode: 4638355-03, and accompanying Issues and Decision Memorandum at 11, ACCESS Barcode: 4638355-02.

Rather than address or explain why Borçelik's cited contentions and agency decisions were improper, Commerce ignored the cited decisions and asserted a general conclusion that it "has previously excluded import duties related to imports from a prior period from the COP of the period under review." IDM at 43, P.R. 354 (citing *Notice of Final Determination of Sales at Less Than Fair Value: Carbon and Certain Alloy Steel Wire Rod from Mexico*, 67 Fed. Reg. 55800 (Dep't Commerce Aug. 30, 2002) ("*Wire Rod from Mexico*"), ACCESS Barcode: 4793692-02, and accompanying Issues and Decision Memorandum at 25-27 (Cmt. 10), ACCESS Barcode: 4793692-01).

Similarly, Commerce failed to consider precedent before this Court and the Federal Circuit that detracts from its assertion that limiting IPCs closed during the POI is the agency's "longstanding practice."  IDM at 43, P.R. 354.  In its case brief in response to the *Preliminary Determination*, Borçelik raised that the agency's decision that evidence of finality must take place during the POI has been explicitly and repeatedly rejected.  Sales Case Br. at 6, nn.19, 21, 22, and 7 n.24 (citing *Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1197 (Fed. Cir. 2021); *Icdas*, 654 F. Supp. 3d at 1311; *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1357 (Ct. In'tl Trade 2023); *Tosçelik*, 348 F. Supp. 3d at 1328; *Habaş Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.Ş.  v. United States*, 439 F. Supp. 3d 1342, 1347 (Ct. Int'l Trade 2020); *Tosçelik Profil ve Sak Endüstrisi A.Ş. v. United States*, 321 F. Supp. 3d 1270, 1276 (Ct. Int'l

15

Trade 2018)). In fact, "{t}he court has long relied on the duty drawback adjustment's two-prong test, and has rejected attempts to 'add a new hurdle to the drawback test that is not required by the statute'" because "Commerce's evaluation of when an IPC is closed has *evolved*." *Icdas*, 654 F. Supp. 3d at 1320 (citation omitted) (emphasis added).

In *Tosçelik*, the Court previously looked at a submitted IPC that was not closed by the GOT after the POI, was still collected and verified by Commerce, but was nonetheless excluded from the duty drawback adjustment. 348 F. Supp. 3d 1321. After voluntarily remands, where the agency abandoned its earlier arguments that "merely concluded that the POI limitation applied" and that a POI limitation would "thwart potential manipulation of 'information reflected on the {IPCs} prior to their closure,'" *Id.* at 1325 (citation omitted). Commerce instead argued before the Court that limiting IPCs to those that closed within the POI, even still verified by Commerce, would "reasonably allow{} Commerce to evaluate respondents' 'actual duty liability extinguished . . . during the POI.'" *Id.* (citation omitted). The Court found that, despite "Commerce and the interested parties {doing} an excellent job in the investigation and remand proceeding working through the complexities of the Turkish IPR," ultimately "Commerce failed to identify a reasonable explanation supported by the record." *Id*. at 1326. In other words, Commerce's POI limitation was not supported by the evidentiary record. It further found that under the Turkish drawback program, "Commerce's treatment of costs and expenses tends to depend on the <u>nature</u> of the expense, rather than a consistent, imagined adherence to calculating all costs solely that occur and are accounted for in the POI." *Id*. at 1327. The Court went on to reject Commerce's rationale that POI limitation for the closure of IPCs is "more administrable for Commerce," holding instead that any "interesting hypothetical of impractability" fails where "Commerce verified the usage and closure of the {IPCs} on the record, including those that closed after the

16

POI, and all of which included exports to the United States made during the POI." *Id.* at 1325, 1327. Simply put, "Commerce's verification of all the closed {IPCs} belies its arguments that it would be impracticable to do so. Commerce did it." *Id.* at 1327.

Post-*Tosçelik*, the Court has continued to reject a blanket attempt by Commerce to limit IPC closures to those in the POR, and has acknowledged that there is no consistent agency practice to do so. For example, in *Icdas*, the Court found that "Commerce has not always been clear as to when it will consider an IPC closed," but that in accepting IPC closures that occurred post-POI, it is not unreasonable for Commerce to require "some evidence of finality for the drawback adjustment." 654 F. Supp. 3d at 1321. Most recently in *Assan*, the Court held that "closure of an IPC is a necessary condition to establish eligibility for a duty drawback adjustment," but that such eligibility also "depends on a showing that the exemption from the import duties is linked, or related, to the exportation of subject merchandise, and that the quantity of imports is sufficient to account for the exemption." 2026 WL 1747091, at *10. Notably, while the *Assan* Court did not grant a duty drawback adjustment for an IPC that closed after the POI, the reasoning was not Commerce's assertion here: that IPCs will only be considered by the agency where it closed within the POI. Rather, the Court acknowledged that an IPC that closed after the POI must also be supported by evidence regarding the amount and nature of such an adjustment. *Id.* at *11. Borcelik has provided such evidence in this investigation.

In its *Final Determination*, with precedent pointed out by Plaintiff, Commerce instead explained issues that are not in dispute, including: that the two-prong test in *Saha Thai* must be satisfied, which Plaintiffs agree, as *Saha Thai* supports a duty drawback adjustment; that the agency must act reasonably; that closed IPCs can sufficiently provide evidence of finality, as highlighted by Commerce in its cited *Rebar 22-23AR PDM* at 11-12, where the agency noted that,

17

like here, closed IPCs should be relied on; that Commerce has made different decisions about duty drawback adjustments that are unrelated to the Turkish IPC system, as unlike here, those duties were unrelated and bore no relation; and that Commerce has taken different positions in its treatment of IPC closures, such as its cited *Alum. Foil 22-23AR IDM* at 17, which plaintiffs also rely on for its holding that the agency must use parallel adjustments in its cost and sales adjustments consistent with the "matching principle," *see infra*, at Section IV.B.[1]  Notably, what Commerce failed to explain were the cases and decisions cited by Plaintiffs.

---

[1] In its *Final Determination*, rather than address the cases cited by Borçelik, Commerce's discussion of applicable precedent was limited to:

1. The two-prong test in *Saha Thai*, which Plaintiffs agree applies, IDM at 40 n.141.
2. *Certain Oil Country Tubular Goods From the Republic of Turkey: Final Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances, in Part*, 79 Fed. Reg. 41971 (Dep't Commerce July 18, 2014), ACCESS Barcode: 3215270-03, and accompanying Issues and Decision Memorandum at Comment 1, ACCESS Barcode: 3215270-02, for the undisputed assertion that the agency has a practice of granting a duty drawback adjustment where a respondent demonstrates that it sufficiently met the requirements of the IPR, IDM at 41 n.143, P.R. 354;
3. *Apex Frozen Foods Priv. Ltd. v. United States,* 862 F.3d 1322, 1330 (Fed. Cir. 2017), for the undisputed assertion that where no statute prescribes how to perform an analysis, an agency's gap-filling is based on reasonableness, IDM at 41 n.145, P.R. 354;
4. *Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 28574 (Dep't Commerce May 27, 2021), ACCESS Barcode: 4609643-03, and accompanying Issues and Decision Memorandum at Comment 3: 4609643-02, for the understanding that "when closed, {} IPCs were sufficiently finalized so as to provide a reliable source for the respondents' duty drawback experience during the POI." IDM at 42, P.R. 354. Again, however, it is not disputed that a closed IPC reliably provides duty drawback information; rather, it is disputed is that the IPC must close within the POI;
5. *Certain Stilbenic Optical Brightening Agents From Taiwan: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 80 Fed. Reg. 61368 (Dep't Commerce Oct. 13, 2015), ACCESS Barcode: 3403557-03, and accompanying Issues and Decision Memorandum at Comment 2, ACCESS Barcode: 3403557-02, IDM at 43 n.156; *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Bar From Germany*, 67 Fed. Reg. 3159 (Dep't Commerce Jan. 23, 2002), ACCESS Barcode: 4786931-03, and accompanying Issues and Decision Memorandum at Comment 13, ACCESS Barcode:

Of course, an agency may reach a different conclusion based on the individual facts of the case and investigation. However, that is not what occurred in this determination. Here, Commerce failed to take into consideration previous agency practice, raised by Borçelik, act consistently with the raised practice, or explain why this situation is different. Nor did the agency acknowledge this Court's and the Federal Circuit's precedent that directly contradicts its conclusory statements. Just as this Court held that "Commerce is obligated to treat similar situations in a consistent manner and must reasonably explain any deviation from an established practice," *PT. Zinus Glob. Indon. v. United States*, 762 F. Supp. 3d 1257, 1272 (Ct. Int'l Trade 2025), *appeal docketed*, No. 25-1674 (Fed. Cir. Apr. 22, 2025) (citing *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)), it should similarly find here that remand is necessary for Commerce to consider the detracting evidence and prior determinations raised, and unaddressed, in the record.

---

4786931-01, for the observation that Commerce did not consider cost data that occurred prior to a POI for not-yet produced products, IDM at 43 n.156, P.R. 354;

6. *Wire Rod from Mexico IDM* at Comment 10, where "duties paid b{ore} no relationship to the cost of producing the subject merchandise during the POI." IDM at 43 n.157, P.R. 354. Here, however, the duties were verified by Commerce and bear relation;

7. *Certain Frozen Warmwater Shrimp form India: Final Results of Antidumping Duty Administrative Review, Partial Rescission of Review, and Notice of Revocation of Order in Part,* 75 Fed. Reg. 41813 (Dep't Commerce July 19, 2010), ACCESS Barcode: 4787871-02, and accompanying Issues and Decision Memorandum, at Comment 5, ACCESS Barcode: 4787871-01, and *Liberty Frozen Foods Priv. Ltd. v. United States*, 819 F. Supp. 2d 1346 (Ct. Int'l Trade 2012), which both had different drawback systems than the Turkish IPC one, IDM at 44 nn.158, 159, P.R. 354; and

8. *Alum. Foil 22-23AR IDM* at 17 (Cmt.5), where the agency found that it is its "practice in this proceeding . . . to abide by {the} matching principle to calculate corresponding sales side and cost side duty drawback calculations. However, {its} practice has also been to treat the duty drawback calculations on the sales side and the cost side differently." IDM at 45 and n.161, P.R. 354. Commerce relied on this decision—that highlights the agency's lack of standard practice ("{o}ur practice in *this* proceeding . . . . However, our *practice has also been*")—to criticize YDÇ for relying on conflicting precedent that Commerce now finds "unclear." *Id.*

**B.      Commerce's Calculation of the Drawback Adjustment Is Not in Accordance with Law**

Notwithstanding that Commerce unreasonably limited Borçelik's duty drawback adjustment to a single IPC, Commerce's calculation of the drawback is also not based on substantial evidence or in accordance with law because the agency erred in treating IPCs differently when calculating the cost- and sales-side duty drawback adjustments. *See* Cost Case Br. at 4-5, C.R. 575, P.R. 331.

To calculate the duty drawback adjustment to the U.S. price— the sales-side adjustment— Commerce "makes a corresponding upward adjustment to the cost of production ('COP') and constructed value ('CV'),"—the cost-side adjustment—"to account for the cost of unpaid import duties for which the producer remains liable until the merchandise containing the dutiable input(s) is exported and the exemption program requirements are satisfied." *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, 357 F. Supp. 3d 1325, 1331 (Ct. Int'l Trade 2018) (citing *Saha Thai*, 635 F.3d at 1341–44). The "matching principle," upheld by the Federal Circuit in *Saha Thai*, is "the basic accounting practice whereby expenses are matched with benefits derived from them," *Saha Thai*, 635 F.3d at 1342, *i.e.*, parallel adjustments on both sides of its calculation: the cost- and sales-side duty drawback adjustments. The Federal Circuit held that "EP, COP, and CV should be increased together or not at all." *Id*. at 1343.

In the *Final Determination*, Commerce found "it appropriate and reasonable to include all IPCs in the cost-side duty drawback adjustment" while limiting the IPCs included in the sales-side duty drawback adjustment because "the cost-side adjustment is not meant to capture the benefit realized by the respondent at the closing of the IPC." IDM at 46, P.R. 354. Commerce's explanation does not address the principle that for the calculation of the antidumping duty rate to be accurate, the sales and costs calculations must match. *See Saha Thai*, 635 F.3d at 1342-43; *see*

20

*also Maverick Tube Corp. v. Tosçelik Profil ve Sac Endustrisi A.S.*, 861 F.3d 1269, 1273 (Fed. Cir. 2017) ("{W}e explained that {19 U.S.C. § 1677a(c)(1)(B)} defines a plain and simple rule: a duty drawback adjustment shall be granted when, but for the exportation of the subject merchandise to the United States, the manufacturer would have shouldered the cost of an import duty").

While "*Saha Thai . . .* should not be expanded to encompass all duty drawback adjustment calculations made by Commerce," it is instructive where, as here, the "particular facts, exemption program, and recordkeeping practices" utilize the matching principle. *Uttam Galva Steels Ltd. v. United States*, 311 F. Supp. 3d 1345, 1355 (Ct. Int'l Trade 2018); *see also Uttam Galva Steels Ltd. v. United States*, 416 F. Supp. 3d 1402, 1406 (Ct. Int'l Trade 2019), *aff'd* 997 F.3d 1192 (Fed. Cir. 2021). Because Commerce has acknowledged that its cost-and sales-side adjustments must be reciprocal such that Commerce must exclude or include the same IPCs in calculating both adjustments, the matching principle therefore applies. *See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020–2021*, 88 Fed. Reg. 7941 (Dep't Commerce Feb. 7, 2023), ACCESS Barcode 4336947-03, and accompanying Issues and Decision Memorandum at 37, ACCESS Barcode: 4336947-02 ("{W}e agree with Colakoglu that the exempted duty cost ratio calculation included a certain IPC that was excluded from the sales-side duty drawback adjustment. As a result, *to be consistent with the sales-side* duty drawback adjustment, we determined that it is appropriate to exclude *this IPC* from the exempted duty cost calculation for the final results.") (emphases added). Therefore, Commerce's calculation must be remanded as not supported by substantial evidence or in accordance with law.

21

C.      **Commerce's Decision to Refuse to Input Surrogate Cost Data Is Not Supported by Substantial Evidence**

Finally, Commerce's refusal to input surrogate cost data should be remanded, as it is unreasonable, inconsistent with past practice, and not sufficiently explained as reasonably departing from such practice.  In its challenge to Commerce's *Preliminary Determination*, Borçelik challenged that "Commerce erroneously excluded [      ] CONNUMs from the home-market comparison (accounting for [      ] home market sales) that were produced and sold by Borçelik but had no cost data," and that "Commerce's practice requires that Commerce revise the SAS programming language so that these sales are assigned surrogate costs and included in the home-market comparison in the Final Determination."  Cost Case Br. at 1, C.R. 575, P.R. 331.  Borçelik explained that "Commerce has established a practice of using the SAS program to find surrogate cost data in its home market analysis where home market sales do not have cost data" and that when such cost data for a CONNUM is unavailable, Commerce's practice is to "'rely on surrogate cost{s} based on the most similar CONNUM.'" *Id*. at 3 (collecting cases).  To further highlight the unreasonableness, Borçelik pointed to Commerce's contradictory decision to find surrogate costs for home market sales for the other mandatory respondent's CONNUM's which also did not have reported cost data.

In its *Final Determination*, Commerce affirmed its *Preliminary Determination* and declined to assign surrogate costs because "the CONNUMs at issue were not included in the COP database of products manufactured during the POI," and that "the missing cost information is not a matter of incomplete costs variables for existing CONNUMs, but rather a wholesale absence of the CONNUMS themselves."  IDM at 13–14, P.R. 354.  Commerce continued to conclude that "the record does not establish whether these home-market sales involved CONNUMs that were sold but not produced during the POI," and that "{a}ssigning surrogate costs . . . would require

22

Commerce to create new cost records not supported by { Borçelik's} data." *Id*. at 14. Commerce's explanation, however, is both unreasonable and unsupported.

While Commerce frames the issue as one in which Borçelik incorrectly reported cost data that prevented the agency from assigning surrogate costs, the real issue is much simpler. The issue is whether Borçelik's unreported cost data, that does not exist, amounts to Borçelik's failure to meet its "burden of reporting complete and accurate data." *Id.* It does not. Borçelik cannot report data it does not have. As Borçelik cited in its response, Commerce's practice is to use surrogate cost data for CONNUMS with missing costs when "faced with missing cost data." *Heavy-Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 24777 (Dep't Commerce Apr. 9, 2024), ACCESS Barcode 4537743-03, and accompanying Issues and Decision Memorandum at 4, ACCESS Barcode: 4537743-02 ("*HWR from Mexico IDM*"). *See Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016–2017*, 84 Fed. Reg. 30694 (Dep't Commerce June 27, 2019), ACCESS Barcode: 3852471-03, and accompanying Issues and Decision Memorandum at 21, ACCESS Barcode: 3852471-02 (changing the macro in the home market analysis program for "find surrogate cost" to "YES"). In *HWR from Mexico*, as raised by Borçelik, Commerce properly entered surrogate cost data for CONNUMs with no reported cost data. Cost Case Br. at 3 n.8 (citing *HWR from Mexico IDM* at 21). However, Commerce did not address Borçelik's cited precedent in its *Final Determination*.

Moreover, beyond failing to act similarly to past precedent, Commerce did not provide a reason why it did not use surrogate cost data for CONNUMs where costs are missing. Instead, it faulted Borçelik for not reporting data that did not exist. That is not reasonable. While "Commerce

23

has discretion in selecting the methodology for allocating goods in an investigation," it "must base its methodology on the best available information in order to establish antidumping margins as accurately as possible." *PT. Zinus Glob. Indon. v. United States*, 628 F. Supp. 3d 1252, 1264 (Ct. Int'l Trade 2023) (citing *Tri Union Frozen Prods*., *Inc. v. United States*, 163 F. Supp. 3d 1255, 1267 (Ct. Int'l Trade 2016); *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F. 3d 1376, 1382 (Fed. Cir. 2001)).  Here, unlike in *PT Zinus*, Commerce did not "express{} reasonable concerns regarding the accuracy of {Borçelik's} methodology."  628 F. Supp. at 1264.

## V.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)   Hold that Commerce's *Final Determination* was not in accordance with law or supported by substantial record evidence with respect to the claims advanced by Plaintiffs in this appeal;

(b)   Remand the *Final Determination* to Commerce to reconsider its decision in light of the record as a whole and consistent with the opinion of this Court; and

(c)   Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

Jessica R. DiPietro
Leah N. Scarpelli
Matthew M. Nolan
Tyler J. Kimberly
Chelsea J. Burkhart

**ArentFox Schiff LLP**
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 350-3622

*Counsel to Borçelik Çelik Sanayii Ticaret A.Ş ,
ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik
Servis San. Ve Tic. A.Ş. and Bamesa Muradiye
Demir Çelik San. Ve Tic. A.Ş*

July 10, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiffs' 56.2 Motion for Judgment on the Agency Record filed on July 10, 2026 complies with the word limitation requirement. The word count for Plaintiff's 56.2 Brief, as computed by ArentFox Schiff LLP's word processing system is 7,532.

/s/ **Jessica R. DiPietro**
Jessica R. DiPietro

*ArcelorMittal Çelik Ticaret A.Ş., Bamesa Celik Servis San. Ve Tic. A.Ş. and Bamesa Muradiye Demir Çelik San. Ve Tic. A.Ş*